**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JOSE BLAS UMANA DIAZ, on behalf of himself,
FLSA Collective Plaintiffs and the Class Members,

                               Plaintiffs,

    -against-

WEINSTEIN LANDSCAPING and MARK
WEINSTEIN,

                               Defendants.
-------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

19-CV-06050 (JMA) (ST)

**TISCIONE, United States Magistrate Judge:**

On October 28, 2019, Plaintiff Jose Blas Umana Diaz ("Diaz"), on behalf of himself and others similarly situated ("Prospective Plaintiffs"), commenced this action against Defendants Weinstein Landscaping ("Weinstein Landscaping") and Mark Weinstein ("Weinstein") (together, "Defendants") alleging violations under the Fair Labor Standards Act of 1938 ("FLSA") and New York Labor Law ("NYLL").  Before this Court is Diaz's motion for (1) conditional certification of this case as a collective action under the FLSA; (2) Defendants to produce data containing Prospective Plaintiffs' name and relevant information to send the Court-Authorized Notice ("Notice"); and (3) equitable tolling of the statute of limitations on Prospective Plaintiffs' claims.

For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted.

## I.    BACKGROUND

### A.  Facts

Plaintiff Diaz is an individual residing in Suffolk County, New York.  FAC ¶ 5.

Defendant Weinstein Landscaping is a New York based corporation with its principal place of business at 51 Cherry Avenue, West Sayville, NY 11796.   FAC ¶ 6.  Defendant Weinstein is the sole owner and operator of Weinstein Landscaping.  *Id.* ¶ 7; Defs.' Opp. at 1.

Defendants employed Diaz to work as a landscaper as well as for snow removal from October 2003 through August 2019.  FAC ¶ 9.  Diaz claims he worked for Defendants from seven (7) a.m. until five (5) p.m., Monday through Saturday, for an average of sixty (60) hours per week.  *Id.* ¶¶ 18-20.

Diaz alleges that Defendants did not pay him on an hourly basis, instead he received a flat amount of (1) $175.00 per day in 2015 and 2016; (2) $185.00 per day in 2017; and (3) $200.00 per day in 2019.  FAC ¶ 22.  Diaz avers that Prospective Plaintiffs, while employed by Defendants, were paid at a comparable rate without any overtime compensation; not given adequate breaks; not required or instructed to clock in or clock out; and not given NYLL wage statements, written notice of their hourly rate or any other time or wage records.  *Id.* ¶¶ 23-28. Diaz claims that Defendants failed to maintain employment records.  *Id.*  Diaz further claims that Defendants neither accurately deducted payroll deductions nor provided any breakdown of such payroll deductions. Pl.'s Aff. ¶ 15 Pl.'s Mem. of Law at 7, 18; Weinstein Dep. at 30-31.

Diaz further alleges that there are more than forty (40) Prospective Plaintiffs that worked for Defendants during the relevant period, who do not have adequate knowledge of their claims and lack the financial resources to file individual suits.  FAC ¶ 30.

Diaz cites to Defendant Weinstein's testimony to provide names and details of Prospective Plaintiffs that Defendants employed including:

1. Oscar Torres ("Torres") since 2013 and paid him in cash.  Weinstein Dep. at 51.

2. Nick Ramirez ("Ramirez") for approximately six (6) to seven (7) years and paid him in both cash and check. *Id*.

3. Denny Amaya ("Amaya") for approximately six (6) to seven (7) years and paid him in both cash and check. *Id*. at 54.

4. Jose Annabell ("Annabell") since Spring 2020 and pay him in cash. *Id*. at 55.

5. Jose Alfaro ("Alfaro") currently and pay him in cash. *Id*. at 56.

*See also* Pl.'s Mem. of Law at 8-10. Diaz alleges that Prospective Plaintiffs suffered common violations due to Defendants' failure to (1) maintain employment records under 29 USC §§ 201, and 215 (a); and (2) pay minimum wages and overtime compensation under 29 USC §§ 201, 207(a)(1) and 215(a). *See* FAC ¶ 53.

Defendants deny Diaz's allegations. *See generally* Defs.' Opp. Defendants allege that Weinstein Landscaping's current employees were paid above the applicable minimum and overtime wages; and that his employees including Diaz were paid a different amount each week depending on hours worked. *Id*. at 2.

As to wage records, Defendant Weinstein testified that he employed four (4) to five (5) laborers from 2013 through 2018; that different employees had different hourly rates ranging from $15 an hour in 2013-2016; to $15-$16 an hour in 2017, to $15 to $17 an hour from 2018 to 2020; that employees worked eight (8) to ten (10) hours each day with half an hour paid lunch break and were given overtime; that no written notice of hourly wage rate was provided to employees; and that no electronic records were maintained. *See* Weinstein Dep at 21-22, 28; Defs.' Opp. 4-7. Defendant Weinstein further testified that (1) Defendants paid some Prospective Plaintiffs in a combination of approximately 60% cash and 40% check, and the others were paid only in cash; (2) that Defendants did not deduct payroll deductions from the

cash payments but only from the checks and did not provide a breakdown of payroll deductions with each check; and (3) that the only time Defendants provided notice of payroll deductions was with the first check.  *See* Weinstein Dep. at 29-32; Pl.'s Mem. of Law at 7, 18.

As to time records, Defendant Weinstein testified that employees were not required to clock in or out; that it was only since 2020, that he maintained a sign-in sheet in his truck, which was not required for employees to fill-in each morning; rather, at the end of the week, Defendant Weinstein filled in the sheet himself for all employees based on the hours he thought the employees had worked that week.  Weinstein Dep. at 24-26, 50.  The employees signed these sheets on a weekly basis.  *Id*.  Defendant Weinstein also testified that no such sign-in sheet was maintained prior to 2020 or during the course of Diaz's employment with the exception of some handwritten and unsigned records in 2019 or so.  *Id*.; *See also* Pl.'s Mem. of Law at 7.

Diaz alleges that Defendants did not produce any written records of hours worked by Prospective Plaintiffs.  *Id*.  Diaz alleges that Prospective Plaintiffs suffered common violations under the FLSA due to Defendants' failure to maintain employment records and pay proper wages.  *See* FAC ¶ 53.  Accordingly, Diaz moves for conditional certification of this case as a collective action.  *See generally*, FAC.

## B.  Procedure

On October 28, 2019, Diaz commenced this action against Defendants alleging violations under the FLSA.  Dkt. No. 1.  On April 15, 2021, Plaintiff Diaz filed his First Amended Complaint ("FAC").  Dkt. No. 27.  Defendants filed the Answer to the FAC on April 28, 2021.  Dkt. No. 28.

The parties were involved in some discovery process.  On September 14, 2020, Defendants conducted a deposition of Diaz.  Pl.'s Mot., Ex. 3 at 1.  On September 18, 2020,

Plaintiff conducted a deposition of Defendant Weinstein.  Defs.' Opp., Ex. A at 1.  On

September 30, 2020, Plaintiff Diaz filed his first Motion to Compel, which was granted in part

and denied in part.  Dkt. No. 25.  On February 10, 2021, Diaz filed the instant motion for

conditional certification.  Dkt. No. 22.  Further discovery is stayed pending the instant motion.

Dkt. No. 25.

## II.    LEGAL STANDARD

Under the FLSA, an employee may sue on behalf of herself and other employees who are

"similarly situated." 29 U.S.C. § 216(b).  Those "similarly situated" employees may opt-in to a

collective action brought under the FLSA, and therefore become plaintiffs, by filing a written

consent form.  *Id.*; *See also Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718 (PGG), 2016

WL 4718413, at 5 (S.D.N.Y. Sept. 9, 2016).

The conditional certification of an FLSA collective action is a discretionary exercise of

the court's authority; it is useful as a case management tool, facilitating the dissemination of

notice to potential class members.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)

(quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)).  Because it is

discretionary, a motion for conditional certification involves a "far more lenient" standard than a

motion for class certification under Rule 23 of the Federal Rules of Civil Procedure.  *Feng v. Soy

Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 WL 1070813, at 2 (E.D.N.Y. Mar. 14, 2016).

Courts in the Second Circuit apply a two-step process to determine whether an action

should be certified as an FLSA collective action.  *Myers*, 624 F.3d at 554–55.  In the first step,

the one we are asked to engage in here, the court looks at the pleadings, affidavits, and

declarations to determine whether the Plaintiff and potential opt-in plaintiffs are sufficiently

"similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* at 555.

The first step requires only a "modest factual showing" that the plaintiff and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted). The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original).

Furthermore, "[w]here, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Korenblum v Citigroup, Inc.*, 195 F. Supp. 3d 475, 480–81 (S.D.N.Y. 2016); *see also Jibowu v. Target Corporation*, 492 F. Supp. 3d 87, 119. Some district courts in this circuit have begun using a "modest-plus" standard in cases where some discovery has already occurred prior to the conditional certification motion. *Gaston v. Valley Nat'l Banc*orp, No. 17-CV-1886 (FB) (SMG), 2018 WL 4158407, at 2 (E.D.N.Y. Aug. 30, 2018) (describing the "'modest-plus' standard as a 'sliding scale,' with progressively more scrutiny applied as more evidence enters the record"). As the court in *Jibowu* observed, "[t]his heightened standard is rooted in efficiency concerns, and a reviewing court should deny conditional certification if it determines that the solicitation of additional opt-ins through court-authorized notice would not promote efficient resolution of common issues." *Jibowu*, 492 F. Supp. 3d at 119 (quotation marks omitted).

Under the modest-plus standard, the court looks beyond the pleadings and affidavits submitted by plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete. *Gaston*, 2018 WL 4158407,

at 2.  The court considers all available discovery but does not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated.  *See Jibowu*, 492 F. Supp. 3d. at n. 34, 39.

This Court, in light of the efficiency concerns, will apply the modest-plus standard and consider the evidence obtained in discovery with an understanding that the body of evidence is incomplete.  *See Wang v. Kirin Transportation Inc.*, 2022 WL 79155 at 3 (E.D.N.Y. Jan. 7, 2022); *Gaston*, 2018 WL 4158407, at 2.

If the plaintiff satisfies this first step and is granted conditional certification, the Court will later, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named Plaintiff.  *Myers*, 624 F.3d at 555.  If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice.  *Id.*

## III.   DISCUSSION

### A.  FLSA Certification

Diaz argues for certification on the grounds that Defendants subjected Prospective Plaintiffs to common violations by failing to maintain employment records and not paying the minimum wages and the overtime compensation.  Defendants deny these allegations and argue against certification claiming that no violations occurred under the FLSA.

In determining whether plaintiffs are "similarly situated" to members of a proposed collective, courts generally require 'that there be a factual nexus between the claims of the named plaintiff and those who have chosen or might potentially choose to opt-in to the action. *Jibowu*, 492 F. Supp. 3d. at 122; citing *Brown v. Barnes & Noble, Inc*., No. 16-CV-7333 (RA) (KHP), 2018 WL 3105068, at *10 (S.D.N.Y. June 25, 2018).  "The relevant issue is not whether

the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA." *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) citing *Myers*, 624 F.3d at 555.  Those allegations may not be "conclusory," but must include "some actual evidence" of a common practice by defendants.  *Reyes v Nidaja LLC*, No. 14 Civ. 9812, 2015 WL 4622587, at 2 (S.D.N.Y. Aug. 3, 2015).  Courts require this to avoid fishing expeditions by plaintiffs without real evidence of a common practice and to avoid "allegations of a common plan or scheme, which are impossible for a court to test or for Defendants to attempt to refute." *Huer Huang v. Shanghai Citi Corp.*, 19-cv-7702 (LJL), 2020 WL 5849099 at 10 (S.D.N.Y. Oct. 1, 2020).

Diaz alleges that Prospective Plaintiffs are similarly situated because they suffered common violations under the FLSA.  The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the legally mandated minimum regular wage) for hours worked above forty (40) per week.  29 U.S.C. §§ 206(a), 207(a)(1).  The FLSA also provides that an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions.  29 U.S.C. § 211(c).

Here, to determine whether Prospective Plaintiffs were similarly situated, this Court will consider the pleadings, affidavit, declarations and discovery that has occurred so far to ascertain the factual nexus between Prospective Plaintiffs with an understanding that the body of evidence is incomplete.  *Gaston*, 2018 WL 4158407, at 2.  This Court, however, does not weigh the merits of the underlying claims.  *See Jibowu*, 492 F. Supp. 3d. at n. 34, 39.

Diaz has sufficiently attested to facts to show that he and the Prospective Plaintiffs have suffered common violations under the FLSA.  In the FAC, Diaz alleged that Prospective

Plaintiffs were similarly situated because they did not receive (1) the minimum wages for all hours worked; (2) overtime compensation for all hours worked over forty (40) per week; (3) written statements of time and wage records. *See generally*, FAC.  To corroborate these allegations, Diaz submitted his affidavit, relevant excerpts from his own deposition testimony and the excerpts from Defendant Weinstein's testimony.  Dkt. No. 22.

Diaz averred and testified as to the timeframe and the hours he worked for Defendants, his pay while working for Defendants, and the practices he experienced while working there. FAC ¶ 18-22.  Diaz alleged that Prospective Plaintiffs were all laborers, worked similar hours including performing snow removal and landscaping work with similar shifts for comparable pay, and were paid roughly the same amount and in the same manner.  *Id*.  The allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are generally sufficient for condition certification under the FLSA.  *Ni v. Red Tiger Dumpling House Inc*., CV 19-3269 (GRB) (AKT), 2020 WL 7078533 at 5 (E.D.N.Y. Nov. 30, 2020).

To find further factual support for certification, Diaz cites to Defendant Weinstein's testimony to provide names and details of Weinstein Landscaping's employees.  *See* Pl.'s Mot., Weinstein Dep., Ex. 2, Dkt. No. 22.  Defendant Weinstein testified that his employees were essentially laborers, who worked similar hours; performed landscaping and snow removing services; worked similar shifts for comparable pay, were paid roughly the same hourly rate in cash, check or both; were not given written notice of their hourly rate; were not provided written time records inasmuch as no signed time sheets were maintained before 2020; were not provided with a breakdown of payroll deductions with each paycheck with the exception of the very first paycheck; were not provided paystubs; and that payroll deductions were only made from the 40% of the pay in the form of a check and not from the majority employees who were paid in

cash.  Weinstein Dep. at 21, 28.  Accordingly, this Court may infer, without going into the merits

of the allegations, that Prospective Plaintiffs including Diaz suffered similar alleged violations

under the FLSA.  *See e.g*., *Genxiang Zhang v. Hiro Sushi at Ollie's Inc*., 17cv7066 (DF), 2019

WL 699179 at 8 (S.D.N.Y. Feb. 5, 2019).

At this stage, the Court is not to "resolve factual disputes, decide substantive issues going

to the merits, or make credibility determinations." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651,

665 (S.D.N.Y. 2013).  The Court need not evaluate the merits of the underlying claims to

determine that a definable group of 'similarly situated' plaintiffs can exist here. *Garcia v. Four

Broth. Pizza, Inc*., No. 13 CV 1505 (VB), 2014 WL 2211958 at 8 (S.D.N.Y. May 23, 2014).

We presume at this stage that the deposition testimonies of Diaz and Defendant

Weinstein, meet the low burden for conditional certification.  By providing names of co-workers

through Defendant Weinstein's testimony, Diaz has offered facts that push the allegations

beyond conclusory, which would allow the Court to test those assertions and would give

Defendants the ability to contest them.  *Shibetti v. Z Restaurant*, 18-CV-856 (ERK) (ST), 2019

WL 11623937 at 3-4 (ED.N.Y. Sept. 3, 2019) (denying certification because plaintiff but did not

"provide any names, dates, or circumstances to give a factual basis for their statements); *but see

Placinta v. Grazina Pilka, Inc*., 16-CV-4272-KAM-SJB, 2018 WL 5024170 at 7-8 (E.D.N.Y.

Oct. 5, 2018) (granting certification based on parties' testimonies).

In step two of the certification process in an FLSA action, should the Court find that

Prospective Plaintiffs are not in fact similarly situated to Diaz, on a fuller record, then the Court

may decertify the collective action.  *Myers*, 624 F.3d at 555.

Thus, Diaz has made a "modest factual showing" that Prospective Plaintiffs were subject

to "a common policy or plan" that violated the FLSA.

**B.  Notice Period**

Diaz argues that to provide the Prospective Plaintiffs with the Notice of this action, this Court should authorize Notice for all laborers who worked for Defendants for six (6) years before the initial Complaint was filed, i.e., from October 28, 2013; or alternatively, for three years prior to Diaz's filing of the initial Complaint, i.e., from October 28, 2016.  Pl.'s Mem of Law at 26.  Plaintiff further requests that the Court accordingly toll the statute of limitations for 90 days from the date of the filing of the Complaint until the opt-in period.  *Id*. at 30-31.

Defendants argue that if this Court grants Plaintiff's motion for certification, Defendants should be directed to provide only names and addresses of "nonmanagerial employees" who worked for Defendants within the last three years calculated from date of order on FLSA certification; not from filing of initial Complaint on October 28, 2019.  Def.s' Opp. at 13.  Defendants further argues that the limitations period should not be tolled because Diaz did not exercise diligence and waited nearly sixteen (16) months after filing of the initial Complaint to move for certification.  *Id*. at 16.

The notice period is generally governed by the statute of limitations for the violations alleged to avoid sending notice to individuals whose claims will be time-barred.  *Gurrieri v. County of Nassau*, 16-CV-6983 (ADS) (SIL), 2019 WL 2233830 at 8 (E.D.N.Y. May 23, 2019).  The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a willful violation.  *Id.; Yu G. Kev. Saigon Grill, Inc*., 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.,* No. 14-CV-1647, 2015 WL

6442545 at 5 (E.D.N.Y. Oct. 23, 2015). Here, Diaz alleged willfulness in his Complaint, and neither party disputes the three-year notice period at this stage. FAC ¶ 11; Defs.' Opp. at 13.

In FLSA cases, to calculate the statute of limitations period, courts generally begin counting back from the date of the conditional certification order because the statute of limitations on FLSA claims runs until the plaintiff consents to join the action. *See* 29 U.S.C. §256; *Garriga v. Blonder Builders, Inc.*, CV 17-497 (JMA) (AKT), 2018 WL 4861394 at 7 (E.D.N.Y Sept. 28, 2018).

Sometimes, the Court will grant equitable tolling, allowing for the statute of limitations on potential claims to be stayed while certain aspects of the litigation are pending. In deciding whether to apply equitable tolling, the courts consider two prongs including whether plaintiff: (1) acted with reasonable diligence during the time period he/she seeks to have tolled, and (2) proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted).

In *Jibowu*, plaintiff's diligence was under scrutiny because significant time had elapsed since plaintiff's complaint and the certification motion. The plaintiff's request for equitable tolling was granted even though more than two years elapsed between the filing of the complaint and motion for conditional certification. *Jibowu*, 492 F.Supp.3d at 128. The court's rationale was that "[b]ecause the FLSA claims of some prospective plaintiffs will, indeed, still likely be time-barred, the Court finds it all the more appropriate that "challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date" rather than blanketly denied at this stage." *Id* citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)).

Under the second prong, a delay "caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v. Restaurant Associates Events Corp., et. al.*, No. 10-CV-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011). Moreover, the courts in the Second Circuit have permitted equitable tolling while the motion for conditional certification is before the court. *Castillo v. Perfume Worldwide Inc*., CV 17-2972, 2018 WL 1581975, at 17 (E.D.N.Y. Mar. 30, 2018); *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at 8 (S.D.N.Y. July 2, 2013); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d at 438, 445 (noting that potential plaintiffs should also not be penalized due to the courts' heavy dockets and understandable delays in rulings).

Further, Diaz requested equitable tolling for 90 days starting from the filing of Plaintiff's Complaint until the expiration of the opt-in period arguing that the period is justified in light of the COVID-19 public health crisis and because the majority of potential plaintiffs are Spanish-speaking. Pl.'s Rep. at 10. Courts generally adopt a 90-day opt-in period where the parties agree or if a special circumstance requires it. Even though the COVID-19 public health crisis is a special circumstance, the courts in this district, more recently, have granted a 60-day opt-in period. *See Panora v. Deenora Corp*., 19-cv-7267 (BMC), 2020 WL 7246439 at 5 (E.D.N.Y Dec. 8, 2020) (granting 90-day opt-in period in light of Covid pandemic and because prospective plaintiffs were Spanish speaking); *but see Lin v. JD Produce Maspeth LLC*, 20-CV-2746 (WFK) (TAM), 2021 WL 5163218 at 12 (E.D.N.Y. Nov. 5, 2021) (granting a 60-day opt-in period); *Emeterio v. A & P Restaurant Corp*., 20-CV-970 (JMF), 2021 WL 101186 at 1 (S.D.N.Y. Jan. 12, 2021) (granting a 60-day opt-in period).

13

Accordingly, this Court respectfully recommends a 60-day opt-in period in this case. This Court further recommends that noticed be keyed to the three years prior to the date of the Complaint, not the filing of this Motion.  The courts "frequently permit notice to be keyed to the…period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (*quoting in part Whitehorn*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)).  There may be opt-in plaintiffs whose claims would be time-barred if this Court only granted equitable tolling to the date of the filing of this motion, but whose claims would not be time-barred if this Court granted such tolling to the date of the complaint.  As the latter has not yet been litigated, this Court recommends that Notice be sent to any individual who worked as a laborer, with the understanding that any further equitable tolling will need to be fully briefed and decided at a later time.  *Winfield*, 843 F. Supp. 2d at 410.

Thus, this Court recommends that the Notice period should run three years prior to the filing of the Complaint on October 28, 2016, and that the statute of limitations should be tolled for 60 days from the date of the filing of the Complaint until the opt-in period concludes.

### C.  Court-Authorized Notice, Proposed Notice of Pendency and Consent to Join Form

Diaz seeks this Court's approval for a Notice of Pendency ("Notice") and Consent Form advising all Prospective Plaintiffs of their right to join this collective action.  Pl.'s Mem of Law at 22.  Defendants proposes certain modification to Diaz's proposed Notice and Consent Form. Defs.' Opp. at 7.

After reviewing the motion papers, this Court recommends that the Notice and Consent Forms should be effectuated according to the following:

### 1.  Notice Title

Defendants argue that Notice title should be modified from "Court-Authorized Notice of Lawsuit" to a different title, so as to avoid the appearance that the Court encourages participation in the lawsuit.  Defs.' Opp. at 8.  Diaz opposes this modification on the grounds that Courts in this District have commonly granted use of the proposed language. Pl.'s Rep. at 5.

Courts in this district regularly approve notice entitled "court authorized notice".  *See e.g.*, *Jiao v. Shang Shang Qian Inc*., 18 Civ. 5624 (DG) (VMS), 2021 WL 4356043 at 4 (E.D.N.Y. Sept. 24, 2021); *Qian Xiong Lin v. DJ's Int'l Buffet Inc*., No. CV 17-4994 (JS)(AYS), 2019 WL 5842798, at 6-7 (Appendix C) (E.D.N.Y. Nov. 7, 2019).

Thus, Defendants' request to modify the title of the proposed Notice is denied.

### 2.  Section 2 Entitled "Do Nothing"

Defendants argue that Notice should be modified to add a reference that Prospective Plaintiffs retain the right to bring a separate lawsuit if they fail to opt-in to the instant action and should indicate that the statute of limitations period will continue to run.  Defs.' Opp. at 8.  Diaz opposes this request on the grounds that proposed modifications would be redundant.  Pl.'s Rep. at 5-6.

Here, even though the Section 2 does not reference the right of the putative class members' to bring a separate lawsuit, the proposed Notice makes reference to this right in Section 9 entitled "Do I have a lawyer in this case?" Further, while Section 2 does not indicate that the statute of limitations period will continue to run, Section 6 entitled "What happens if I do nothing at all?" explicitly provides Defendant's proposed indication.  As such, Defendants' concerns are addressed in different sections of the proposed Notice.

15

Thus, this Court recommends that Defendants' request, to add a reference that Prospective Plaintiffs retain the right to bring a separate lawsuit if they fail to opt-in to the instant action and to indicate that the statute of limitations period will continue to run, be denied.

### 3. Section 4 Entitled "How do I join this collective action lawsuit?"

Defendants argue that Notice should be modified to change the directions regarding how to join the lawsuit to reflect that all forms should be sent to the Clerk of the Court.  Defs.' Opp. at 8.  Diaz accepts Defendants' proposed modification.  Pl.'s Rep. at 6.

Thus, this Court recommends accepting Defendants' modification to change the directions regarding how to join to reflect that all forms be sent to the Clerk of the Court.

### 4. Section 5 Entitled "What happens if I join the collective action lawsuit?"

Defendants argue that Notice should be modified to remove language that references if Prospective Plaintiff join the lawsuit, they designate Diaz's counsel to make decisions and act on their behalf.  Defs.' Opp. at 8.  Diaz opposes this request on the grounds that language provided in the proposed Notice is nearly identical to the language drafted and approved by this Court in another matter.  Pl.'s Rep. at 6.

In *Castillo*, the court approved the language to read: "If you [proposed plaintiffs] join this lawsuit and send your "Consent to Join" form to the Clerk of the Court of the United States District Court, Eastern District of New York, 100 Federal Plaza, Central Islip, NY 11722, you agree to have the Plaintiff and his counsel, …, to act as your representative and make decisions on your behalf concerning the case, including approving any settlement."  *Castillo* 2018 WL 1581975, at 13.

Thus, given that Diaz is the class representative, this court recommends denying Defendants' request for this modification to remove the language that references if Prospective Plaintiff join the lawsuit, they designate Diaz's counsel to make decisions and act on their behalf.

**5. Section 6 Entitled "What happens if I do nothing at all?"**

Defendants argue that Notice should be modified to reference that Prospective Plaintiffs retain the right to bring a separate lawsuit if they fail to opt-in to the instant action. Defs.' Opp. at 8. Diaz accepts Defendants' proposed modification. Pl.'s Rep. at 6.

Thus, this Court recommends accepting Defendants' modification to reference that Prospective Plaintiffs retain the right to bring a separate lawsuit if they fail to opt-in to the instant action.

**6. Section 9 Entitled "Do I have a lawyer in this case?"**

Defendants argue that Notice should be modified and reworded to better explain an opt-in plaintiff's options to choose counsel. Defs.' Opp. at 9. Diaz opposes this request on the grounds that the proposed language is sufficiently similar to language drafted and approved by this Court in other similar matters. Pl.'s Rep. at 7.

Here, the proposed Notice explicitly states in Section 9 that Prospective Plaintiffs may "hire another attorney of [their] choosing" if they do not wish to be represented by Diaz's counsel, Pervez & Rehman, P.C. Therefore, the language in the proposed Notice is presented neutrally. *See Williams v. TSU Glob. Servs. Inc.*, No. 18-CV-72 (RRM) (ST), 2018 WL 6075668, at *9 (E.D.N.Y. Nov. 20, 2018), report and recommendation adopted, No. 18-CV-72(RRM) (ST), 2019 WL 1056273 (E.D.N.Y. Mar. 1, 2019) (approving the language, "If you choose to join this lawsuit, you may be represented by a lawyer of your choosing, including

17

Plaintiffs' Counsel. . ."); *Siewmungal v. Nelson Mgmt. Grp. Ltd*., No. 11 CV 5018 BMC, 2012 WL 715973, at *5 (E.D.N.Y. Mar. 3, 2012).

Thus, this Court recommends denying Defendants' request for modification to better explain Prospective Plaintiffs' options to choose counsel.

### 7. Page 4 Questions and Comments

Defendants argue that Notice should be modified so that questions and comments should not be directed to Diaz's counsel because that sets up direct communication between an unrepresented plaintiff and counsel, creating the appearance of attorney solicitation. Defs.' Opp. at 9. Diaz accepts Defendants' proposed modification. Pl.'s Rep. at 7.

Thus, this Court recommends accepting Defendants' modification so that Questions and comments should not be directed to Plaintiff's counsel.

### 8. Look back period

Defendants argue that the Notice should be modified so that the look back period should be consistent with any decision of this Court. Defs.' Opp. at 9. Diaz opposes this request. Pl.'s Rep. at 7-8.

Since this Court recommended a three-year Notice period, it if further recommended that Diaz modify the Notice to that effect.

Further, the Consent Form should be modified according to the following:

### 1. Return Directions

Defendants argue that the Consent Form should be made returnable to Clerk of the Court and not Diaz's counsel. Defs.' Opp at 9. Diaz consents to this modification. Pl.'s Rep. at 8.

Here, in conjunction with this district's common practice and the parties' consent, the Proposed Consent to Join Form should be returnable to the Clerk of the Court of the Eastern

District of New York.  *Jiao v. Shang Shang Qian Inc.,* No. 18-CV-5624, 2021 WL 4356043 at 7 (E.D.N.Y. Sept. 24, 2021).

Thus, this Court recommends accepting Defendants' modification so that the Consent Form be made returnable to Clerk of the Court and not Diaz's counsel.

### 2.  Prospective Plaintiff's Legal Representation

Defendants object to the Consent Form's language, which sets forth that if Prospective Plaintiffs do not select counsel, but send their forms back to Diaz's counsel, they will automatically be represented by them.  Defs.' Opp. at 9.  Diaz opposes this modification on the grounds that the proposed language presents, at most, a de minimis risk of discouraging potential opt-in plaintiffs from seeking their own counsel.  Pl.'s Rep. at 8-9.

Here, the proposed Consent Form plainly provides that Prospective Plaintiffs can elect "to be represented by another attorney" or "pro se without the assistance of an attorney".  Given this plain language, the chance of a reasonable reader being unfairly discouraged from seeking other counsel is de minimis at best.  *See Mariani v. OTG Mgmt., Inc.*, No. 16CV01751ARRCLP, 2016 WL 11670735, at 6-7 (E.D.N.Y. Nov. 21, 2016) (noting that when the notice instructs that opt-in plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel); *Siewmungal*, 2012 WL 715973, at 4 (E.D.N.Y. Mar. 03, 2012) ("Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice.").

Thus, Defendants' request for modification of language with regards to legal representation of Prospective Plaintiffs is denied.

### D.  Language

Diaz requests that Notice and other documents for Prospective Plaintiffs be in English and Spanish languages.  Pl.s' Mem. of Law. at 24.  Defendants have not objected to this request. In light of the "broad remedial purpose" of the FLSA, the courts have ordered the translation of notice and opt-in forms into the mother tongue of opt-ins.  *See e.g.*, *Castillo*, 2018 WL 1581975 at 15 (E.D.N.Y. Mar. 30, 2018); *Robles v. Liberty Restaurant Supply, Corp.*, No. 12–CV–5021 (FB) (VMS), 2013 WL 6684954, at 11 (Dec. 18, 2013).

Thus, this Court recommends that the Notice, Consent to Join Form and other such documents, as modified here, be circulated in English and Spanish languages.

### E.  Dissemination of the Notice

Diaz requests to have the Notice and Consent Forms (1) be disseminated in any relevant language, via mail, email, and/or text message, or social media chat, to all Prospective Plaintiffs; and (2) be posted on the conspicuous locations of Defendants' warehouse and offices and included in employee's pay envelopes or other method of delivery of their paycheck information. Pl.s' Mem. of Law. at 20-23.  Diaz further requests that he be authorized to send a reminder mailing and email to all unresponsive collective action members half-way through the Notice period.  *Id*. at 23.  Defendants argue that methods of dissemination be restricted since there is no legitimate basis for Plaintiff's counsel to disseminate the proposed notices via text message, e-mail or social media, or for notices to be disseminated in employee pay envelopes.   Defs.' Opp. at 11.

"The typical methods for disseminating notice to putative collective action members are through the United States mail and by posting hard copies at Defendants' place of business." *Qian Xiong Lin v. DJ's International Buffet Inc*., CV 17-4994 (JS) (AYS), 2019 WL 5842798 at 5-6 (E.D.N.Y. Nov. 7, 2019); *See also Malloy v. Richard Fleischman & Assocs., Inc.*, No. 09-cv-

322, 2009 WL 1585979, at 4 (S.D.N.Y. June 3, 2009).  However, recent decisions in this district

have deviated from the traditional method in light of the COVID-19 pandemic.  *See Panora*,

2020 WL 7246439, at 5 ("The COVID-19 public health crisis favors some form of electronic

dissemination.  Plaintiff thus may use forms of direct communication with potential plaintiffs –

including mail, e-mail, text message, and direct social media channels such as WhatsApp and

WeChat – in addition to posting on plaintiff's counsel's website and at the defendant

restaurant."); *Ling Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2020 WL

4041133, at 5 (E.D.N.Y. July 17, 2020) ("Although the Court would normally hesitate to allow

much more than first-class mail notices, the current public health crisis likewise favors more

options.").

     Thus, this Court recommends that Diaz may use forms of direct communication with

Prospective Plaintiffs – including mail, e-mail, text message, and direct social media channels

such as WhatsApp and WeChat.  *Id*. This Court further recommends that Defendants may post

the Notice and Consent forms in a conspicuous non-public common area.  However, the Court

disagrees with plaintiff that a reminder notice should be permitted in this case and is not inclined

to allow a reminder absent good reason in light of the breadth of notice that it has permitted

above.  *Ling Chen*, 2020 WL 4041133, at 5.  Without objection by Defendants, this Court allows

Diaz to disseminate the Notice to Prospective Plaintiffs via United States Postal Service First

Class Mail.

### F.  Scope and Manner of Disclosure

     Plaintiff requests that Defendants produce a Microsoft Excel data file containing

employees' contact information including but not limited to last known mailing addresses, law

known telephone numbers, last known email addresses, last known Signal WhatsApp, WeChat

and/or Facebook usernames, work location, dates of employment, and position.  Pl.'s Mem of law at 20-21.  Defendants argue that Defendant should provide the above information in the format in which it is maintained in the ordinary course of business, i.e., via text messages or telephones and not emails since Defendants do not maintain electronic records; and that Diaz provides no basis for his request for social media accounts to demonstrate that such request is appropriate.  Defs.' Opp. at 11.

To effectuate this notice, this Court recommends that Defendants produce a list in Microsoft Excel format including but not limited to names, last known mailing addresses, last known telephone numbers, dates of employment, last known email addresses, last known WhatsApp, and WeChat for all non-managerial employees who worked for defendants from October 28, 2016, until the Notice is issued.  This is customarily approved in the Second Circuit. *See See Panora*, 2020 WL 7246439, at 4; *Tanski v. AvalonBay Cmtys., Inc.*, No. 15-CV-6260, 2017 U.S. Dist. LEXIS 112506 at *50 (E.D.N.Y. Mar. 31, 2017) ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members.").

### G.  Expedited Notice

To provide Prospective Plaintiffs with Notice of this action, Diaz requests that Defendants provide the names and contact information for those individuals on an expedited basis on the grounds (1) that the statute of limitations continues to run against them; and (2) that their primary language is not English.  Pl.'s Mem of Law. at 11, 20-21.  Defendants have not opposed this request.

The courts in this District commonly grant requests for the expedited production of information to provide expedited notice to prospective plaintiffs.  See *Beaton v. Verizon New*

*York, Inc.*, 20-CV-672 (BMC), 2020 WL 5819902 at n.3 (E.D.N.Y. Sept. 30, 2020) (granting fourteen days for production of information); *Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp. 3d 246, 255 (E.D.N.Y. 2020).  Accordingly, this Court determines that fourteen days would be sufficient for Defendants' production of the requested information.  *Id*.

Thus, this Court recommends Diaz's request for expedited Notice be granted and Defendants are directed to produce the relevant information, as discussed hereinafter, within fourteen (14) days of the Order certifying the collection action.

Therefore, it is respectfully recommended that Diaz's Motion for Conditional Certification be granted in part and denied in part.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommend that Plaintiffs' Motion for Conditional Certification, to Authorize Notice to the Conditional Collective, and for Equitable Tolling Be GRANTED.  Specifically, I recommend Plaintiffs' motion for conditional certification of a conditional collective of laborers who Defendants employed from October 28, 2016 be granted, that the Notice and opt-in Consent Forms be amended and Notice be sent to Prospective Plaintiffs in accordance with this Court's recommendations.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
     February 28, 2022